UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CARMEN RAMOS,

                     Plaintiff,

            -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, COMMISSIONER RAYMOND KELLY,
LIEUTENANT LAWRENCE SULLIVAN, POLICE OFFICER
LOUIS ROGERS,

                     Defendants.

------------------------------------------------------------------------X

**VERIFIED AMENDED COMPLAINT AND JURY DEMAND**

DOCKET No: 05 CV 7535
(LTS)

       The Plaintiff, CARMEN RAMOS, by her attorneys, Cronin & Byczek LLP, as and for her verified complaint against the Defendants, respectfully sets forth:

## NATURE OF ACTION

       1.    This is an action for declaratory relief and damages to secure protection of and to redress deprivation of rights secured by the United States Constitution, New York Executive Laws §296, New York City Human Rights Law, New York City Administrative Code and Title VII of the Civil Rights Act of 1964, as amended, provided for relief against discrimination in employment and to correct unlawful employment practices on the basis of the Plaintiff's race, national origin, and sex and in retaliation for prior opposition to discrimination. This action also seeks relief for violations of the Civil Rights Action 42 U.S.C. §1981, 1983 and 1985.

       2.    Additionally, this claim seeks money damages, both accrued and prospective, on behalf of the plaintiff.

## **JURISDICTION**

3.  The jurisdiction of this court is in both based upon Federal questions. Further, the jurisdiction of this court is invoked pursuant to the New York State Constitution, Constitution of the United States, 28 U.S.C. §1343 (3) and (4) and 28 U.S.C. 1331 as well as 42 U.S.C. §2000e through 2000e (15) and the New York State Executive Law §296, and the New York City Human Rights Law and Administrative Code.

4.  The rights, privileges, and immunities sought here to be redressed are those secured by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, provisions against race and sex discrimination based on 42 U.S.C. §1981 and 1983, provisions against racial discrimination in employment based on Title VII of the Civil Rights Action of 1964 as amended, and guidelines and rules promulgated there under along with the applicable provisions of the New York State Constitution and the New York City Rights Law and Administrative Code.

5.  Jurisdiction is also invoked under the doctrine of pending jurisdiction with respect to State claims set forth herein.

6.  On or about May 12, 2004, Plaintiff, CARMEN RAMOS, filed a Verified Complaint with the United States Equal Employment Opportunity Commission which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, Title VII of the Civil Rights Act as amended.

7.  On or about June 9, 2004, Plaintiff, CARMEN RAMOS, filed a Complaint with the New York City Police Department Office of Equal Employment Opportunity which agency receives and investigates charges of discrimination and harassment as set

forth by the City of New York Administrative Code and the Patrol Guide for the New York City Police Department.

8. The complaint charged employment discrimination, sexual harassment, retaliation and hostile working environment against Plaintiff, CARMEN RAMOS by the Defendants, because of Plaintiff's race, national origin, gender and in retaliation for whistle blowing complaints made to Plaintiff's supervisors. Copies of said Complaints with the EEOC and OEEO are annexed hereto as Exhibit "A".

9. The Defendant, New York City Police Department, did substantiate that the incidents complained of by the Plaintiff did provide evidence of a violation of department policy as outlined in Patrol Guide Procedure 205-37.

10. On or about May 27, 2005, Plaintiff, CARMEN RAMOS, received a "Right to Sue Letter" advising her of the completion of the pre-requisites to sue in Federal Court. A copy of the "Right to Sue Letter" issued to Plaintiff RAMOS is annexed here to as Exhibit "B".

## VENUE

11. Venue exists in the Southern District of this Court, County of New York, State of New York, based upon Defendants' place of business and residence.

12. Further, the causes of action accrued within New York State (specifically, within the City of New York) based upon this situs of all acts charged and based upon violations of United States Constitution, Title VII of the Civil Rights Act of 1964, New York State Constitution and the New York State Executive Law, and New York City Human Rights Law and Administrative Code.

**PARTIES**

13. Plaintiff, CARMEN RAMOS, is a resident of Bronx County, State of New York, and is a citizen of the United States.

14. Plaintiff is a female Hispanic American of Puerto Rican descent who registers opposition to discriminatory practices by the Defendants, including but not limited to hostile working environment, retaliation and sexual harassment by the Defendants and thus is a member of a protected class.

15. Defendant, CITY OF NEW YORK ("NYC") is a municipal corporation duly organized under the laws of the City and State of New York, having its place of business within the City of New York and including as its function operating, managing and financing the NEW YORK CITY POLICE DEPARTMENT.

16. Upon information and belief, Defendant, NEW YORK CITY POLICE DEPARTMENT ("NYPD"), operates under the direct authority of NYC and is the official New York City agency charged with law enforcement and investigative duties through New York City, maintains control offices at 1 Police Plaza, New York, New York, along with satellite offices and precincts throughout the City and Counties of New York within the Southern District of New York.

17. Defendant, RAYMOND KELLY, ("KELLY") at all times relevant to this complaint was the Commissioner of the NYPD, the Chief Executive of the NYPD and Plaintiff's Superior Officer; Defendant, KELLY, is sued herein in his individual and official capacities.

18. Defendant, KELLY, as the Police Commissioner of the New York City Police Department, was the principal administrator of NYPD, employed by the NYPD.

19. In this capacity as Police Commissioner of the NYPD, KELLY was responsible for the overall policies of the NYPD, including the institution and application of the departmental rules, with respect to personnel matters including the sexual, ethnic, racial and/or other discriminatory conduct throughout the NYPD during all times relevant to this complaint.

20. Defendant, KELLY, at all times relevant herein was responsible for the conduct of all police personnel operating under his command including all of the defendants and is responsible for assuring that all officers purport themselves consistently with the Constitution of the United States and all State, Federal and Local Laws.

21. Defendant, LIEUTENANT LAWRENCE SULLIVAN, ("SULLIVAN"), was a New York City Police Officer and Lieutenant at all times relevant, employed by the New York City Police Department, and a supervisor within the Viper Unit of the NYPD, where the Plaintiff was assigned during all relevant times herein. At all times relevant, SULLIVAN was the Plaintiff's Superior Officer and is sued in his individual and official capacities.

22. Upon information and belief, Defendant, SULLIVAN was and is a resident of the State of New York and during the incidents alleged herein, and at all times relevant acted upon color of law, within the scope of his official duties as a police officer and pursuant to statutes, ordinances and laws of NYC, New York State and the United States.

23. Defendant, Police Officer, LOUIS ROGERS, ("ROGERS") was a New York City Police Officer, at all times relevant, employed by the New York City Police Department, being assigned to the Viper Unit of NYPD along with the Plaintiff. At all

times relevant, ROGERS sexually harassed and retaliated against the Plaintiff and is being sued in his individual and official capacities.

## FACTS

## PLAINTIFF'S CAUSES OF ACTION

24. Plaintiff was appointed as a Police Officer by the NYPD on or about June, 1996, and was assigned on or about August 23, 2003 through April, 2004 to the Viper #11, located at 1385 Washington Avenue, 1 Henry, Bronx, New York. Plaintiff is currently assigned to the 52nd Precinct, Bronx, New York.

25. Throughout the years of Plaintiff's employment with the NYPD and prior to her assignment at Vipor Unit, she has received overall satisfactory evaluations and no disciplinary problems.

26. Plaintiff, throughout the years of her employment with NYPD received consistent evaluations whereby she always met or exceeded performance criteria.

27. Plaintiff was well regarded by supervisors and was always a dutiful and loyal employee of NYPD.

28. From the onset of the Plaintiff beginning her position with the Viper Unit, Plaintiff has been subject to pervasive gender discrimination, sexual harassment as well as ethnic discrimination by the male police officers in the aforementioned Viper Unit.

29. The male police officers and supervisors at the Viper Unit would watch pornographic videos on the computer and monitors in the presence of the Plaintiff.

30. Plaintiff verbally complained of the pornographic videos to her supervisors and other male police officers. Said complaints were disregarded by the Defendants.

6

31. The pornographic videos were shown on the computer and T.V. monitors on a daily basis from mid September of 2003 to the present.

32. As a result of the complaints of the sexual harassment of the pornographic videos, Defendant ROGERS began calling Plaintiff a "Ditzy Bitch". This comment has been made in front of numerous other police officers within the Viper Unit including Defendant SULLIVAN. Plaintiff complained to her supervisors including Defendant SULLIVAN of the harassing comments made by Defendant ROGERS. No actions were taken against Defendant ROGERS by Plaintiff's supervisors as a result of her complaints.

33. That on September 29, 2003, while Plaintiff was working the midnight shift at the Viper Unit with Defendant ROGERS, ROGERS left the unit and did not return for a significant period of time in violation of NYPD Policy of always maintaining two police officers at the Viper Base. At that time, Defendant ROGERS was aware of Plaintiff's lack of training in the use and control of the Viper cameras but nevertheless chose to leave the base without permission.

34. Plaintiff confronted ROGERS, who smelled of alcohol upon return to the base, concerning his violation of the NYPD Policy. ROGERS told Plaintiff "life sucks" and walked away. Plaintiff complained of Defendant ROGERS AWOL from his assignment to her supervisors to no avail.

35. On or about October 20, 2003, Defendant SULLIVAN denied Plaintiff a day off and instead ordered her to work the 4 to midnight tour. Defendant SULLIVAN was aware that Plaintiff had to be in Family Court on a personal matter, but nevertheless refused to give her time off.

36. Defendant SULLIVAN stated in front of other police officers that "she

(Plaintiff) reminds me of my wife, she's (Plaintiff) a cunt, like my wife".

37. On or about December of 2003, while working at the Viper Base, Defendant Sullivan requested Plaintiff to make the cameras "pan" from monitor to monitor. Plaintiff informed Defendant SULLIVAN that she did not know how to make the cameras "pan" since she was never trained to do so by him or anyone else from the NYPD. Defendant SULLIVAN then asked the other police officers to leave the room and began to berate the Plaintiff.

38. Defendant SULLIVAN was well aware that Plaintiff was never trained in the use of the cameras but chose to humiliate her in front of the other police officers and retaliate against her for her prior complaints of sexual harassment and whistle blowing against Defendants ROGERS and SULLIVAN.

39. On or about December of 2003, other police officers within the Viper Unit informed Plaintiff that Defendants ROGERS referred to Plaintiff, outside of Plaintiff's presence, as a "Ditzy Bitch".

40. On or about December of 2003, Defendant SULLIVAN threatened the Plaintiff with the forfeiture of her vacation days because Plaintiff had not input the vacation time in the vacation folder.

41. Defendant SULLIVAN was informed by Plaintiff that the vacation folder was taken by another police officer and did not return it within the 48 hours allowed by police policy. In fact, the police officer had the vacation folder in his possession for over three weeks preventing Plaintiff from inputting her vacation time in the folder. Nevertheless, Plaintiff did document her vacation with her other supervisors well in advance of her vacation.

42. Defendant SULLIVAN never disciplined the other police officer who held the vacation folder for approximately three weeks to the detriment to the Plaintiff.

43. On numerous occasions, Plaintiff requested time off for holiday or personal reasons (going to Family Court with her daughter). Said requests were rejected by Defendant SULLIVAN. Defendant SULLIVAN also refused to change Plaintiff's tour of duty in order to accommodate her so that she could attend the Family Court Proceedings for her daughter. When other police officers would ask Defendant SULLIVAN for time off he would oblige without any ramification.

44. On December 31, 2003, Plaintiff requested a day off from Defendant SULLIVAN. Defendant SULLIVAN immediately tried to convince Police Officer Dougherty to take the day off so that Plaintiff would be forced to work on New Year's Eve. P.O. Dougherty told Defendant SULLIVAN it was only fair that RAMOS got the day off since she worked all the holidays. Plaintiff had requested days off and was denied for October 3, 2003, Thanksgiving of 2003 and December 27, 2003 by Defendant SULLIVAN.

45. On or about January of 2004, Defendant ROGERS, in retaliation for the filing of complaints against him, struck Plaintiff in the head with a book. Plaintiff complained to her supervisors about Defendant ROGERS actions but no disciplinary action was ever taken against Defendant ROGERS.

46. On or about January of 2004, Defendant ROGERS threw a chair at the Plaintiff resulting in injury to Plaintiff's leg. Plaintiff complained to her supervisors about Defendant ROGERS actions but no disciplinary action was ever taken against Defendant ROGERS.

47. On February 23, 2004, Defendant SULLIVAN threatened to suspend Plaintiff because Plaintiff refused to sign an evaluation that he handed her. Plaintiff did not agree with the evaluation and requested that she contact her union delegate prior to signing same. Defendant SULLIVAN would not allow Plaintiff to contact her union representative. Said actions of Defendant SULLIVAN were done in front of Police Officer Manny Ramos (no relation).

48. On or about March 14, 2004, Defendant ROGERS intentionally struck Plaintiff in the head with a book while working at the Viper Base. Plaintiff reported said incident to her supervisor. Defendant SULLIVAN did not take any action against Defendant ROGERS.

49. On April 29, 2004, Plaintiff's tour/shift was changed by Defendant SULLIVAN in retaliation for her complaints against Defendants ROGERS and SULLIVAN. On said date another police officer overheard Defendant ROGERS tell the Deputy Inspector Sheehan, "I can't take this shit anymore. I need to get out of here, get away from this bitch".

50. Plaintiff has complained to her supervisors over 15 times of discriminatory conduct by the male police officers at the Viper Unit. Plaintiff's supervisors never took any preventative action to quash the discriminatory and harassing conduct.

51. As a result of the Plaintiff speaking out against the discriminatory remarks made against her, her shift was changed to a time Defendant SULLIVAN knew was inconvenient and troublesome for Plaintiff since she was a sole parent of a child.

52. Plaintiff was continuously exposed to a hostile working environment as a result of her complaints of harassment and retaliation.

53. Upon information and belief, the only reason Plaintiff was subjected to the sexual harassment, hostile working environment and retaliation was due to her race, gender and national origin.

## AS AND FOR A FIRST CAUSE OF ACTION PURSUANT TO 42 USC §1981 AGAINST ALL DEFENDANTS

54. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-54 with the same force and effect as it fully sets forth herein.

55. Throughout the events cited herein, the individual defendants while acting under the color of law, subjected the Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States and specifically the equal protection and due process guarantees of the 14th Amendment of the Constitution, civil rights as guaranteed under Article I, Section II, of the New York State Constitution.

56. Plaintiff has been deprived of her constitutional rights to be free of discrimination based upon race, national origin and gender and been damaged and suffered emotional distress and conscious pain and suffering as a result of these actions.

57. The actions of the Defendants, in depriving Plaintiff of her constitutional and civil rights, as herein before stated, were willful and malicious acts.

58. As a result of the as for said wrongful, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in the amount of $5,000,000.00.

59. Based on the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of $5,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION PURSUANT TO 42 USC §1983 AGAINST ALL INDIVIDUAL DEFENDANTS

60. The Plaintiff repeats, reiterates and realleges each and every allegation

contained in paragraphs 1-60 with the same force and effect as is fully set forth herein.

61. The individual Defendants have embarked on a course of conduct that deprived Plaintiff of her rights under the United States Constitution, federal and state law.

62. The facts and circumstances cited above with reference to the Constitution and other civil rights violation suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

63. The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiff of her rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of her right to due process under the 14th Amendment.

64. By these actions, Defendants have jointly and separately deprived the Plaintiff of her rights under the 14th Amendment to the United States Constitution, in violation of 42 USC §1983.

65. As a consequence of Defendants' unlawful actions, Plaintiff demands damages in the amount of $5,000,000.00.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS FOR FIRST AMENDMENT RETALIATION

66. Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraphs 1-66 with the same force and effect as is fully set forth herein.

67. Plaintiff has been unlawfully subjected to hostile work environment and harassment in retaliation for exercising her first amendment rights to free speech and free association.

68. The aforementioned conduct on the part of the Defendants was without cause or justification and violated Plaintiff's rights, civil rights, privileges and immunities

as guaranteed by the first amendment of the United States Constitution as well as the Constitution of the State of New York and the New York City Administrative Code and Human Rights Law.

69. The actions of the Defendants in depriving Plaintiff of her constitutional and civil rights were a willful and malicious act.

70. As a direct and approximate consequence of Defendants' unlawful, discriminatory and harassing conduct, Plaintiff has suffered losses of benefits and privileges from her employment with the NYPD, been damaged professionally and economically, as well as suffered physical and emotional pain and suffering.

71. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $5,000,000.00, and punitive and exemplary damages in the amount of $5,000,000.

## AS IN FOR A FOURTH CAUSE OF ACTION PURSUANT TO 42 USC §1985

72. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1-72 with the same force and effect as is fully set forth herein.

73. Defendants have conspired with and amongst each other to deprive the Plaintiff, of her rights under the United States Constitution, federal and state and city laws.

74. Defendants KELLY, SULLIVAN and ROGERS have conspired to violate the Plaintiffs civil rights pursuant to 42 USC §1985 when they agreed together to implement, direct and/or participate in a program to retaliate, harass and create a hostile work environment against the Plaintiff solely because of her race, national origin and sex and opposition to discrimination and whistle blowing.

13

75. Such policy and practice is an intentional and concerted effort by the Defendants and NYPD supervisors to disparage the Plaintiff.

76. By reason of the aforementioned facts and conspiracy, each of the individual Defendants has violated 42 USC §1985.

77. The actions and omissions of the Defendants, in depriving the Plaintiff of her constitutional and civil rights, by their participation in the discriminatory and harassing and retaliatory conduct, as herein stated, were willful and malicious acts.

78. Because of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00 and punitive and exemplary damages in the sum of $5,000,000.00.

## AS IN FOR A FIFTH CAUSE OF ACTION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 AS AMENDED

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-79 with the same force and effect as is fully set forth herein.

80. Based upon the aforementioned facts, Defendants discriminated against Plaintiff as a result of her sex and national origin by being forced to endure continued and repeated sexual harassment and retaliation.

81. Defendants intentionally and willfully harassed Plaintiff and permitted Plaintiff to be harassed in her employment on account of her sex and national origin and in retaliation for opposition to discrimination, thereby violating §704(A) OF Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2000e-3(a).

82. No action was taken by Defendants sitting, NYPD or Plaintiff's supervisors or its agents to stop the harassment of Plaintiff, thereby contributing to a hostile working environment.

83. As a result of the Defendants' conduct, Plaintiff has suffered economic loss, pain, humiliation, embarrassment, extreme emotional distress and continues to suffer to this day, and further as a result of Defendants' conduct, Plaintiff has suffered both professionally and personally.

84. As a result of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally, Plaintiff seeks punitive and exemplary damages in the sum of $5,000,000.00 against the individual Defendants.

## AS IN FOR A SIXTH CAUSE OF ACTION PURSUANT TO NEW YORK STATE EXECUTIVE LAW §296

85. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-85 with the same force and effect as if fully set forth herein.

86. Based on the foregoing, the Defendants intentionally and willfully discriminated against the Plaintiff in her employment on account of her race, national origin and opposition to discriminatory practices in violation of New York State Executive Law §296. Plaintiff has continuously been victimized by the Defendants for her opposition to sexual harassment, discrimination and a hostile working environment created by the Defendants.

87. Even though Defendants were aware of Plaintiff's complaints and the existence of a hostile work environment, no actions were taken by Defendants in an effort to correct the discriminatory conduct on behalf of the individual Defendants.

88. Such conduct on the part of the Defendants and all others, without cause or justification, violated the Plaintiff's civil rights guaranteed under the New York State Constitution and New York State Executive Law §296.

89. As a result of Defendants' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law §296, the Plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

90. As a result of the foregoing wrongful, careless and intentional acts of the Defendants, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00.

### AS IN FOR A SEVENTH CAUSE OF ACTION PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE SECTION 8-107(1) et. seq.

91. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-91 with the same force and effect as is fully set forth herein.

92. The Defendants discriminatory conduct based on Plaintiff's race and national origin, as well as, retaliation for her whistle blowing and complaints of discriminatory conduct by other members of the NYPD and in retaliation for her opposition to discrimination, constitutes discrimination in violation of the New York City Administrative Code Section 8-107(1) et.seq. and the New York City Human Rights Law.

93. The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of the Defendants.

94. Because of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00.

### AS AND FOR A EIGHTH CAUSE OF ACTION PURSUANT TO 42 USC §1981 AGAINST ALL DEFENDANTS

95. The Plaintiff repeats, reiterates and realleges each and every allegation

contained in paragraphs 1-94 with the same force and effect as it fully sets forth herein.

96.     Throughout the events cited herein, the individual defendants while acting under the color of law, subjected the Plaintiff to retaliatory and disparate treatment because of her efforts to vindicate the rights of other minorities to be free of racially motivated employment discrimination pursuant to the Constitution and laws of the United States and specifically the equal protection and due process guarantees of the 14th Amendment of the Constitution, civil rights as guaranteed under Article I, Section II, of the New York State Constitution.

97.     Plaintiff has been deprived of her constitutional rights to be free of Discrimination, retaliation, and harassment for her complaints and protests decrying the obvious disparaging and racially motivated comments made by the Defendants along with the Defendants failure to properly supervise, failure to properly train and reprimand the aforementioned individual Defendants for their discriminatory and retaliatory conduct.

98.     The actions of the Defendants, in depriving Plaintiff of her constitutional and civil rights, as herein before stated, were willful and malicious acts.

99.     As a result of the as for said wrongful, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in the amount of $5,000,000.00.

100.    Based on the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of $5,000,000.00.

### JURY TRIAL

101.    Plaintiff, Carmen Ramos, requests a jury trial on all questions of fact.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this honorable Court grant the following relief.

1. Declare that the aforementioned actions of the Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution and New York City Human Rights Law and Administrative Code along with all applicable statutes;

2. Declare that the aforementioned discriminatory actions of the Defendants were in violation of New York State Executive Law §296 and Title VII of the Civil Rights Act of 1964 as amended;

3. As in for Plaintiff's First Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

4. As in for Plaintiff's Second Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

5. As in for Plaintiff's Third Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

6. As in for Plaintiff's Fourth Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

7. As in for Plaintiff's Fifth Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

8. As in for Plaintiff's Sixth Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

9. As in for Plaintiff's Seventh Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

10. As in for Plaintiff's Eighth Cause of Action, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00

11. Grant Plaintiff all costs for this action including reasonable attorney's fees; and

12. Grant Plaintiff each and such other relief as this Court may seem just and proper.

Dated:   Lake Success, New York
         May 25, 2006

                                                       Yours etc,
                                                       Cronin & Byczek, LLP

                                                       Rocco G. Avallone (RA8055)
                                                       Attorneys for Plaintiff
                                                       1981 Marcus Ave, Suite 227
                                                       Lake Success, New York 11042
                                                       (516) 358-1700